UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
WRW CHOCOLATES, LLC f/k/a MOONSTRUCK
EAST, LLC,

     Plaintiff,        **MEMORANDUM OF DECISION AND ORDER**

 -against-            02-CV-1903 (DRH)(ARL)

MOONSTRUCK CHOCOLATIER, INC.,
MOONSTRUCK CONFECTIONS COMPANY,
WILLIAM SIMMONS, MOONSTRUCK
CHOCOLATE COMPANY and MOONSTRUCK
CHOCOLATE CO.,

     Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**EINBINDER & DUNN, LLP**
Attorney for Plaintiff
104 West 40th Street
New York, New York 10018
By: Michael Einbinder, Esq.

**LANDMAN CORSI BALLAINE & FORD, P.C.**
Attorney for Defendants Moonstruck Confections Company, Moonstruck Chocolatier, Inc. and William Simmons
120 Broadway - 27th Floor
New York, New York 10271
By: Daniel S. Moretti, Esq.

**PROSKAUER ROSE LLP**
Attorney for Defendant Moonstruck Chocolate Company
1585 Broadway
New York, New York 10036-8299
By: Hal S. Shaftel, Esq.

**HURLEY, District Judge**:

    Defendants Moonstruck Confections Company ("Confections"), Moonstruck Chocolatier, Inc. ("Chocolatier") and William Simmons ("Simmons") (collectively, "Confections Defendants") and defendant Moonstruck Chocolate Company a/k/a Moonstruck

Chocolate Co. ("MCC") (collectively, "Defendants") move for an Order confirming the Arbitration decisions issued on July 29, 2004 and February 4, 2005. For the reasons that follow, Defendants' motions are granted.

## *BACKGROUND*

On April 25, 2000, plaintiff WRW Chocolates, LLC ("Plaintiff") and Confections entered into a License Agreement (the "Agreement") granting Plaintiff an exclusive license to establish and operate chocolate café boutique stores selling products manufactured by Confections. (*See* Decl. of Daniel S. Moretti, dated July 20, 2005 ("Moretti Decl."), Ex. D.) The Agreement provides that "any dispute or disagreement between the parties arising out of or in relation to this Agreement . . . shall be settled by arbitration." (*Id.* ¶ 19(f).)

On March 27, 2002, Plaintiff initiated the instant action against Defendants seeking, inter alia, rescission of the Agreement and damages arising from breach thereof. By Memorandum Decision and Order dated January 7, 2003, the Court granted Defendants' motions to stay this action pending arbitration.

On April 5, 2004, the Arbitrator issued an abbreviated decision indicating that he was denying Plaintiff's motion for summary judgment in its entirety and granting Defendants' motions for summary judgment. On July 29, 2004, he issued another decision which set forth in detail the reasons for his legal and factual conclusions. Plaintiff does not contest the July 29, 2004 decision nor Defendants' right to confirmation thereof.

Thereafter, consistent with the Arbitrator's retention of jurisdiction for this purpose, Defendants submitted motions seeking recovery of attorneys' fees and costs from Plaintiff. These motions were based on paragraph 19(b) of the Agreement, which provides in

pertinent part:

> If any arbitration, suit, or action is instituted to interpret or enforce the provisions of this Agreement, to rescind this Agreement, or otherwise with respect to the subject matter of this Agreement, the party prevailing on an issue shall be entitled to recover with respect to such issue, in addition to costs, reasonable attorney's fees incurred in preparation or in prosecution or defense of such arbitration, suit, or action as determined by the arbitrator . . . .

(Moretti Decl., Ex. D ¶ 19(b).)

On February 4, 2005, the Arbitrator rendered a decision on these motions, finding that the Confections Defendants were entitled to $594,242.51 in attorneys' fees and costs as well as an additional $11,790.27 for the fees and costs associated with the Arbitration. He also found that MCC was entitled to $195,10.96 in attorneys' fees and costs as well as an additional $11,789.94 for the fees and costs associated with the Arbitration. The Arbitrator noted that Plaintiff's claims were "factually and legally complex," "involved alleged violations of the franchise laws of several states, misrepresentation claims and opaque damage assertions apparently totaling several million dollars," and that Plaintiff "unsuccessfully attempted to circumvent the arbitration process contemplated in the Agreement and thereafter embarked upon a contentious discovery path particularly with respect to identification of its damage claims." (Moretti Decl., Ex. B at 2-3.)

Defendants now move to confirm the July 29, 2004 and February 4, 2005 awards. Plaintiff opposes confirmation of the February 4, 2005 award only, arguing, inter alia, that the Arbitrator exceeded his authority by: (1) awarding fees that were unreasonable; (2) by awarding fees on issues that Defendants did not necessarily prevail; (3) by awarding fees for work on Defendants' cross-claims, which Plaintiff contends are outside the scope of the Agreement;

(4) by awarding fees for the retention of local counsel even though out of state counsel could have performed all the tasks necessary in the arbitration; (5) by awarding fees for the retention of an expert who neither testified nor submitted a report setting forth what services he provided; and (6) for awarding fees for work done on behalf of Simmons, who was not a signatory to the Agreement. For the reasons stated below, Plaintiff's arguments are rejected and the arbitration awards are confirmed in their entirety.

## DISCUSSION

*I.     Applicable Legal Standard*

Under the Federal Arbitration Act, a district court may vacate an arbitration award:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4). In addition, a petition to vacate an arbitration award can be based on the non-statutory, judicially created ground of "manifest disregard of the law." *Hoeft v. MVL Group, Inc.*, 343 F.3d 57, 64 (2d Cir. 2003) (citing *Wilco v. Swan*, 346 U.S. 427, 436-37 (1953), *overruled on other grounds*, *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 485 (1989)).

Judicial review of arbitration awards is very limited; in fact, "an arbitration award

should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached." *Banco De Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003) (citations and internal quotation marks omitted); *see also International Bhd of Elec. Workers v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 715 (2d Cir. 1998) ("It is abundantly clear that courts must tread lightly when reviewing arbitral decisions. That a court believes an arbitrator to have committed serious legal or factual error will not justify overturning his decision, provided that the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority.'") (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37- 38 (1987)); *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12-13 (2d Cir. 1997) (noting that arbitration awards are subject to very limited review and are not reviewed for errors of fact or law). As explained by the Supreme Court in *Misco*:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them.

484 U.S. 29, 37-38 (1987).

Here, Plaintiff argues that vacatur is warranted under 9 U.S.C. § 10(a)(4), which permits vacatur of an arbitration award where the arbitrators "exceeded their powers." 9 U.S.C. § 10(a)(4). The Second Circuit has "consistently accorded the narrowest of readings" to this section. *Banco De Seguros*, 344 F.3d at 262 (internal quotation marks and citation omitted).

The relevant inquiry focuses on whether the arbitrators had the power, based on the arbitration agreement, to reach certain issues, not on whether those issues were correctly decided. *Id.* Thus, the Court must determine whether the arbitrator acted within the scope of his authority or whether "the arbitral award is merely the 'arbitrator[s]' own brand of justice." *Id.* (quoting *Local 1199 v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992).

## II. *Plaintiff has Failed to Demonstrate that the Arbitrator Exceeded his Authority*

In the instant case, it is undisputed that pursuant to paragraph 19(b) of the Agreement, the Arbitrator had the authority to award costs and "reasonable attorney's fees incurred in preparation or in prosecution or defense of [the] arbitration" to the "prevailing" party. Thus, absent any dispute regarding the Arbitrator's *power* to determine whether Defendants' fees requests were reasonable, Plaintiff's contentions that the Arbitrator's determination on fees was unreasonable do not form a basis for review under section 10(a)(4). *See id.* at 262 ("Where an arbitration clause is broad, as here, arbitrators have the discretion to order remedies they determine appropriate, so long as they do not exceed the power granted to them by the contract itself."). Accordingly, to the extent Plaintiff argues that the fee award was unreasonable and not that the Arbitrator exceeded his powers, Plaintiff's claims must be denied.

Some of Plaintiff's contentions, however, arguably question the Arbitrator's authority. For example, Plaintiff argues that the Arbitrator exceeded his authority by awarding attorneys' fees for issues upon which Defendants did not prevail. More specifically, Plaintiff asserts that because the Arbitrator only addressed "10 or 11" of Defendants' 26 affirmative defenses and because the Confections Defendants ultimately withdrew their counterclaims, Defendants' fee applications should have been "tailored to omit fees for services related to their

counterclaims or the affirmative defenses upon which they did not prevail." (Pl.'s Mem. at 11.) Plaintiff further argues that the award improperly included fees based upon Defendants' cross-claims, which Plaintiff alleges are outside the scope of the Agreement.

Plaintiff does not cite any authority for the proposition that prevailing parties such as Defendants, who were entirely successful in defeating Plaintiff's claims, should be required to parse out fees and costs associated with affirmative defenses or claims that were either not addressed or not successful. Defendants, on the other hand, cite to Oregon case law, which controls the instant dispute, which indicates that it is unnecessary to apportion a net award of fees if the arbitrator "could conclude that all of the time devoted to the case was necessary to achieve the success that the party achieved in the action." *Freedland v. Trebes*, 986 P.2d 630, 632 (Or. Ct. App. 1999).

The Court recognizes that the relevant provision of the Agreement speaks of "prevailing on an issue." However, it was certainly within the ambit of the Arbitrator's authority to determine that all issues, whether successfully pursued or otherwise, may be the proper subject of an award if the party ultimately prevails. Thus, the Court concludes that the Arbitrator was acting well within the scope of his authority in awarding fees for *all* of Defendants' work in attempting to defeat Plaintiff's claims.

Plaintiff also argues that the Arbitrator exceeded his power by including in the award those fees associated with the defense of Simmons, who was not a signatory to the Agreement. Rather, Simmons is the individually named officer, director and founder of

Confections; Confections is the entity which entered into the Agreement with Plaintiff.[1]

In support of its argument, Plaintiff cites to Oregon case law which indicates generally that "[c]osts and attorney fees are not recoverable absent a statute or contractual provision authorizing the award." *Stelljes v. State Bd. of Parole*, 769 P.2d 177, 179 (Or. 1989). Plaintiff argues that because Simmons was never in contract with Plaintiff, he is not entitled to an award of attorneys' fees.

As noted above, a court has no authority to vacate an award solely because of an alleged error in contract interpretation. *See, e.g.*, *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 1015, 121 S. Ct. 1724, 1728 (2001). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38; *see also Garvey*, 121 S. Ct. at 1728 ("It is only when the arbitrator strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice that his decision may be unenforceable.") (internal quotation marks and citation omitted).

The disputed issue here is whether Plaintiff has an obligation under the Agreement to pay attorneys' fees to a prevailing party in the arbitration who was not a signatory to the Agreement. For ease of review, the relevant provision of the Agreement is provided again below:

If any arbitration, suit, or action is instituted to interpret or enforce

---

[1] Confections was the original licensing company and Chocolatier was its immediate successor company. Thereafter, Chocolatier entered into an agreement with MCC whereby MCC assumed Chocolatier's assets and liabilities, including Chocolatier's rights and liabilities under the Agreement.

> the provisions of this Agreement, to rescind this Agreement, or
> otherwise with respect to the subject matter of this Agreement, the
> party prevailing on an issue shall be entitled to recover with
> respect to such issue, in addition to costs, reasonable attorney's
> fees incurred in preparation or in prosecution or defense of such
> arbitration, suit, or action as determined by the arbitrator . . . .

(Moretti Decl., Ex. D ¶ 19(b).) The Arbitrator interpreted this provision to authorize an award for the fees and costs related to the representation of Simmons. Given that Simmons was named as a defendant in this litigation, which was initiated by Plaintiff to rescind and interpret the Agreement, this construction of the provision is a plausible interpretation and, thus, the Court must uphold it.

In sum, the Court finds that Plaintiff has not established that the Arbitrator exceeded his authority within the meaning of 9 U.S.C. § 10(a)(4). Accordingly, the Court declines to vacate the arbitration awards.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motions to confirm the arbitration awards entered on July 29, 2004 and February 4, 2005 are **GRANTED**. Accordingly, this case is dismissed with prejudice. The Clerk of the Court is directed to enter judgment in favor of

---

[2] Although Plaintiff does not pursue vacatur under the judicially created ground of manifest disregard of the law, the Court notes that even construing Plaintiff's argument as made thereunder, its claims would still fail. Before vacating an arbitration award for manifest disregard of the law, the Court must find that: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Banco De Seguros*, 344 F.3d at 263 (internal quotation marks and citation omitted). No such showing has been made here.

Defendants against Plaintiff as follows:

    Defendants Moonstruck Confections Company, Moonstruck Chocolatier, Inc. and William Simmons: $606,032.78 plus post-judgment interest.

    Defendant Moonstruck Chocolate Company a/k/a Moonstruck Chocolate Co.: $195,110.96 plus post-judgment interest.

Upon entry of judgment, the Clerk of the Court is directed to close this case.

    **SO ORDERED.**

Dated:  Central Islip, N.Y.
       May 31, 2006

                             /s_____
                             Denis R. Hurley, U.S.D.J.